CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
5/29/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **NICOLE LAPORTE,** | ) |
| | )    **Civil Action No. 5:19-cv-000073** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **MIDLAND FUNDING LLC,** | ) |
| <u>et al.,</u> | )    By:    Hon. Michael F. Urbanski |
| | )    Chief United States District Judge |
| Defendant. | ) |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on defendant Mitchell Rubenstein and Associates PC's ("MRA") motion to dismiss the amended complaint. ECF No. 25. Plaintiff Nicole Laporte responded, ECF No. 30, and MRA replied, ECF No. 35. Court heard arguments on the issue telephonically on March 24, 2020 and directed the parties to file supplemental briefing on two issues: (1) whether the Federal Debt Collection Practices Act ("FDCPA") applies to representations made about future conduct, and (2) whether the court should look to state common law in addressing the sufficiency of the complaint. The parties subsequently submitted supplemental briefs, and the matter is ripe for resolution. The court **GRANTS in part** and **DENIES in part** MRA's motion to dismiss for the following reasons.

I.

This case arises out of a debt dispute. Neither party contests that Laporte owed Citibank, NA a debt of $1,740.66. Am. Compl., ECF No. 20, at 2; Wage Garnishment Notice, ECF No. 30-5. Citibank retained the services of Midland Funding, LLC ("Midland"), a debt collection agency, who in turn employed the services of MRA to file a suit in Frederick County,

Virginia against Laporte to collect the debt. Am. Compl., ECF No. 20, at 2. MRA and Midland obtained a default judgment in Frederick County state court against Laporte in 2016.

On February 19, 2019, MRA communicated to Laporte that if she made a payment of $1,663.66 by February 22, 2019, then she would be released from her Citibank debt obligations. Id. Specifically, a Client Services Representative from MRA stated "Upon receipt of $1,663.66 in this office on or before February 22, 2019, you will be released from further obligation in the above-referenced matter, and your account will be marked as paid in full." ECF No. 20-1. Laporte alleges that based on this representation, she sent a cashier's check by overnight mail to MRA on February 19, 2019 and that it was delivered on February 20, 2019. Am. Compl., ECF No. 20, at 3.

Despite this payment, which defendants do not dispute, Laporte received a notice on February 26, 2019, indicating that her wages would be garnished until the full debt amount was satisfied and that she would be required to pay an administrative processing fee. Id. Upon information and belief, Laporte alleges that MRA served a Writ of Garnishment on her employer sometime after her payment. At this point, Laporte alleges she contacted defendants and demanded they stop the garnishment. Id. She claims that defendants acknowledged that although the debt had been fully satisfied, they had not filed a Notice of Satisfaction with Frederick County Court. Id., at 4. She further claims that defendants represented that they would cease the garnishment and file the necessary documents in state court. Id. However, on March 7 and March 14, 2019, Laporte's wages are again garnished. Id. Defendants finally file a Notice of Satisfaction with the state court in Frederick County on March 18, 2019, as evidenced by a file stamp on that date. Id. at 5.

Laporte claims defendants continued to attempt to collect, and did indeed actually collect, additional funds from her after she settled her account. Laporte claims that, due to the unanticipated wage garnishment on top of her initial payment of the requested amount via cashier's check, she has "actual damages in the form of loss of access to her funds, lost wages, and emotional distress, including humiliation and embarrassment." Id. She alleges in Count One that defendants violated the FDCPA prohibition on deceptive representations or means in the course of collection activities as well as its prohibition on unfair or unconscionable collection practices. Id. at 6-7. Further, she alleges that defendants abused the state judicial system and the wage garnishment process in violation of state common law. Id. at 8-9. She requests actual damages, statutory damages, punitive damages, attorney's fees, and such other and further relief as may be necessary, just, and proper. Id. at 10.

## II.

MRA seeks to dismiss the amended complaint in full, alleging that it fails to state a claim. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"—that the pleader is entitled to relief." Id. at 1950; see also Simmons v. United Mortg.

3

& Loan Invest, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

Given the abundance of exhibits attached to the various briefs in this matter, the court notes that it may consider some of these documents without turning the proceeding into a summary judgment analysis. "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd, 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de

Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may take judicial notice of certain publicly available records. Brown v. Ocwen Loan Servicing, LLC, No. CIV. PJM 14-3454, 2015 WL 5008763, at *1 (D. Md. Aug. 20, 2015), aff'd, 639 F. App'x 200 (4th Cir. 2016) (citations omitted) ("A court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment."). Further, the court may consider documents outside of the amended complaint if they are "integral to the Complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the Complaint" where the Complaint "relies heavily upon its terms and effect. . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III.

First, MRA argues that Laporte's FDCPA claims fail as a matter of law. ECF No. 26, at 9. Laporte alleges violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(4), 1692f, and 1692f(1).

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e. The Act "is a strict liability statute and a consumer only has to prove one violation to trigger liability." Akalwadi v. Risk Mgmt. Alts., Inc., 336 F. Supp. 2d 492, 500 (D. Md. 2004). To succeed on a FDCPA claim, a plaintiff must demonstrate that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Stewart v. Bierman, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012) (internal citations omitted). Neither party contests whether Laporte is a "consumer"

5

within the meaning of the statute or that MRA is a "debt collector" within the meaning of the statute. The parties dispute whether MRA violated §§ 1692e & 1692f of the FDCPA.

## A.

Laporte alleges multiple instances of misrepresentation by MRA in the course of its debt collection activities. First, she argues that MRA's February 19 email induced her to pay a certain amount through deceptive communications or means. Second, she argues the Writ of Garnishment MRA served, and failed to retract, falsely represented the status of her debt obligations. The merits of each claim are discussed below.

Section 1692e of the FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). This section of the FDCPA provides a non-exhaustive list of "conduct" that falls within this general prohibition. Id. § 1692e(1)–(16). "The Fourth Circuit has adopted the 'least sophisticated consumer' standard to determine if a Section 1692e violation has occurred," meaning a misrepresentation is actionable so long as it would mislead the "least sophisticated consumer." Stewart v. Bierman, 859 F. Supp. 2d 754, 761 (D. Md. 2012) (citing Chaudhry v. Gallerizzo, 174 F.3d 394 (4th Cir. 1999)). Under the "least sophisticated consumer" standard, "a statement is false or misleading if 'it can be reasonably read to have two or more meanings, one of which is inaccurate.'" Goodrow v. Friedman & MacFadyen, P.A., 788 F. Supp. 2d 464, 472 (E.D. Va. 2011) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir.2006) (citation omitted)). But see Kirkpatrick v. TJ Servs., Inc., 379 F. Supp. 3d 539., 541–42 (E.D. Va. 2019) (stating that the "Fourth Circuit has not opined on this issue.").

A misstatement must be material to sustain a claim under 15 U.S.C. § 1692e. Conteh v. Shamrock Cmty. Ass'n, Inc., 648 F. App'x 377, 379 (4th Cir. 2016). Misleading statements are actionable when they influence a consumer's decision about "how to respond to the efforts to collect the debt." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 127 (4th Cir. 2014). "[T]he misstatement must have the potential to "frustrate [the least sophisticated] consumer's ability to intelligently choose his or her response," Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015) (internal quotation marks omitted), or must be the type of misstatement that "would have been *important* to the consumer *in deciding how to respond* to efforts to collect the debt," Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 126 (4th Cir. 2014) (emphasis in original).

Laporte's first theory of misrepresentation alleges that the February 19 email procured her payment through deceptive means in violation of § 1692e. Though it is unclear which portions of § 1692e that Laporte alleges were violated by the email, her claim appears to be grounded in § 1692e (10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). In the letter, a Client Services Representative from MRA stated: "Upon receipt of $1,663.66 in this office on or before February 22, 2019, you will be released from further obligation in the above-referenced matter, and your account will be marked as paid in full." Am. Compl., ECF No. 20-1. Laporte claims the letter induced her payment by implying that if she paid the amount requested by the deadline provided, she would not have to make any future payments on this debt. Her interpretation hinges heavily

on the phrase "upon receipt," arguing that the language can reasonably be interpreted to mean immediately after receiving the payment solicited. ECF No. 30, at 2.

MRA claims there was no misrepresentation both because (1) it complied with all representations in the letter, and because (2) a statement about future conduct is not actionable under the FDCPA. First, MRA claims it was true to its word in releasing Laporte from her debt obligations after receiving her payment. It argues that the letter did not specify when it would file the Notice of Satisfaction with the state court and that in the absence of a specific timeline, its only duty was to comply with Virginia law, which provides a party with 30 days to file a satisfaction of judgment. ECF No. 26, at 12; See Va. Code Ann. § 8.01-454; id. § 16.2-94.01. Further, MRA argues "neither the phrase 'upon receipt' nor the rest of the February 19 email can be found to be deceptive or false, as neither are speaking to a currently existing fact or condition." ECF No. 35, at 5. MRA relies on state tort law to suggest that, misrepresentation claims under the FDCPA are like fraud claims in that they cannot be predicated on statements regarding future conduct. Id.

In so arguing, the court finds that MRA conflates its administrative duties under state law with its legal obligations under the FDCPA. The question is not whether MRA complied with Virginia law, but rather whether MRA made a statement with the capacity to mislead the least sophisticated consumer in a way that impacts their ability to respond to the collection activity. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). "[T]he test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." Id. at 139. The court disagrees with

8

MRA's contention that Laporte raises an "unreasonable," "bizarre or idiosyncratic" interpretation of the email. ECF No. 35, at 8. The least sophisticated consumer could certainly read a promise to release a debtor from obligations "upon receipt" of payment to mean they will not be subject to future collection activities. MRA had initiated a wage garnishment process prior to sending the February 19 email, knew that Laporte's wages had not yet been garnished and that she was therefore unaware of the process, and was familiar with Virginia state's 30-day requirement to file a Notice of Satisfaction on a paid debt. Rather than clearly communicate what Laporte should expect after paying the requested amount, it elected to use a vague phrase that could lead the least sophisticated consumer to believe they would wipe their hands of a debt upon payment. "It is unlikely that a law firm that specializes in collection…work made its election inadvertently." Fariasantos v. Rosenberg & Assocs., LLC, 2 F. Supp. 3d 813, 822 (E.D. Va. 2014). The court finds the email, in its representations and omissions, to be deceptive.

MRA's deception was material, because it could "could objectively affect the least sophisticated consumer's decisionmaking." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 126 (4th Cir. 2014). "[T]he inquiry is not whether the least sophisticated consumer would have acted differently…. Instead, it is whether the information would have been important to the consumer in deciding how to respond to efforts to collect the debt." Id. at 127. Courts in this circuit have found that the omission of a material fact of which "[o]nly the rarest consumer-debtor" would be aware, such as the risk of losing the protection of the statute of limitations in accepting the terms of a debt settlement, can constitute deception. See e.g. Jennings v. Dynamic Recovery Sols. LLC, No. GJH-19-1895, 2020 WL 949949, at *5 (D. Md.

9

Feb. 27, 2020); Alston v. Midland Credit Mgmt., Inc., Case No. 8:18–cv–14–AMQ, 2018 WL 3309725, at *3 (D.S.C. July 3, 2018). MRA did not disclose the material fact that it had instigated the wage garnishment process, information that could have impacted Laporte's response to the email based on her personal financial situation. Laporte relied on the phrase "upon receipt" and the absence of information about wage garnishment in deciding to comply with the debt repayment terms offered.

The court further finds MRA's argument that statements about future conduct cannot constitute misrepresentations under the FDCPA to be wholly inaccurate. Courts have regularly found conditional statements regarding future conduct to amount to deceptive representations under the FDCPA. See e.g., Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 395–96 (4th Cir. 2014) (affirming a district court's finding that a dunning letter which threatened to communicate "credit information which is known or which should be known to be false," engaged in a "deceptive means to collect or attempt to collect any debt," in violation of §1692e(10)); United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996) (holding ""YOUR ACCOUNT WILL BE TRANSFERRED TO AN ATTORNEY IF IT IS UNPAID AFTER THE DEADLINE DATE," grounds for misrepresentation); Morgan v. Credit Adjustment Bd., Inc., 999 F. Supp. 803, 807 (E.D. Va. 1998) (finding "*IMPORTANT—to stop further action, pay your account in full to this office" could be seen as threatening legal action and could create a "false sense of urgency"); Biber v. Pioneer Credit Recovery, Inc., 229 F. Supp. 3d 457, 469 (E.D. Va. 2017) ("Biber has plausibly alleged that the Letter falsely, deceptively, or misleadingly represents that debt collection through garnishment was imminent, whereas, in reality, garnishment could not occur until after Pioneer

10

had provided Biber the requisite notice of debtor rights and initiated garnishment proceedings."). Notably, the very fact that collectors use these conditional statements to induce prompt payment by the consumer is what makes them potentially deceptive.

MRA argues that even if it agreed that a statement about future conduct could constitute a misrepresentation under the FDCPA, that such a statement must be demonstrably false at the time it was made to be actionable. It claims the February 19 email "is not capable of being false, deceptive, or misleading unless it was alleged, and could be shown, that MRA had no intent to perform when it made the statement." ECF No. 37, at 6-7. However, the very nature of a threat is that its performance is possible, not certain. Further, it is immaterial under § 1692e whether MRA intended to deceive. Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) ("[T]he FDCPA 'imposes liability without proof of an intentional violation.'" (quoting Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir.2011))). An implausible statement can be deceptive even if it contains a kernel of truth. Fariasantos v. Rosenberg & Assocs., LLC, 2 F. Supp. 3d 813, 821–22 (E.D. Va. 2014) ("[A]n implausible indication that a lawsuit will or could be filed is plausibly deceptive and has the capacity to mislead in such a way that would affect a consumer's ability to make intelligent decisions with respect to the alleged debt."). Though it is technically possible that MRA could have filed the Notice of Satisfaction immediately after payment, the alleged facts that Laporte's wages were garnished and that they continued to be garnished even after she called to contest the collection make such an interpretation implausible and therefore deceptive.

Laporte's second theory of misrepresentation alleges that MRA violated § 1692e(2)(A), which prohibits false representation of "the character, amount, or legal status of any debt,"

11

and § 1692e(4), which prohibits the representation that nonpayment will result in actions such as wage garnishment unless such action is lawful and the debt collector intends to take such action, in serving a Writ of Garnishment on Laporte's employer and failing to retract it after she satisfied her debt fully. 15 U.S.C. §§ 1692e(2)(A), 1692e(4). Laporte asserts her employer was served with the writ on or around February 26, 2019, after MRA received Laporte's payment in satisfaction of her debt. She claims that from the time she satisfied her debt until the time garnishment was stopped, the writ constitutes a continued misrepresentation of both the status of her debt obligation and the legality of the garnishment.

MRA argues that it filed its suggestion of garnishment before she satisfied her debt, that it never filed for a second garnishment action, and that it had no duty to notify state court that the debt had been satisfied earlier than dictated by Virginia law. ECF No. 35, at 12-14.

The court finds that the Writ of Garnishment does not constitute a violation of § 1692e(4), because it is not a communication threatening the use of garnishment in the event of nonpayment, but rather a notice indicating garnishment processes have started due to nonpayment. To the extent that the writ implies the existence of a prior representation threatening garnishment, the statement would not have been false. Moffitt v. Asset Mgmt. W. 18, LLC, No. PWG-14-3975, 2015 WL 6715241, at *4 (D. Md. Nov. 2, 2015) (finding that a foreclosure sale related to the collection of a debt did not violate §1692e(4) because the foreclosure sale actually occurred, establishing the truth of the threat). The court finds §1692e(4) inapplicable to this representation under the plain language of the statute.

Regardless, the court finds, taking Laporte's factual allegations as true, the Writ of Garnishment served on Laporte's employer plainly misrepresented the status of her debt in

violation of § 1692e(2)(A). There are insufficient facts alleged to determine when Laporte's employer received the Writ of Garnishment from the state court clerk. However, by the time Laporte's employer communicated that her wages would be garnished on February 26, 2019, the debt had been satisfied and so the representations in the writ had been rendered false. Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 395 (4th Cir. 2014) (affirming judgment for plaintiff where statement that debt had not been satisfied was false on face and, thus, misrepresented character, amount, and legal status of debt). Attempts to collect on debts that have been settled, Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 576 (W.D. Va. 2013), or to collect on debts from the non-debtor, Vitullo v. Mancini, 684 F. Supp. 2d 747, 758 (E.D.Va.2010), can also constitute deception. From February 20, 2019, when Laporte satisfied her debt, until March 11, 2019, when the wage garnishment was released, Laporte's employer was in possession of a writ reflecting false representations about the status of Laporte's debt. ECF Nos. 26-7, 26-8.

The alleged misrepresentation in the Writ of Garnishment was material even if Laporte was aware she had satisfied her debt. As discussed above, the FDCPA prohibits statements that have the capacity to mislead in ways that frustrate intelligent decision making and the plaintiff need not show actual reliance to survive a motion to dismiss. Neild v. Wolpoff & Abramson, LLP, 453 F. Supp. 2d 918, 923 (E.D. Va.2006) (finding that a consumer who knew she had fully satisfied her debt could have been materially misled by a representation claiming she still owed on her debt). "[T]he least sophisticated consumer who previously believed that she had paid her debt in full could… be led to realize that she did indeed have a debt outstanding." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 127 (4th Cir. 2014);

13

See also Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 578 (W.D. Va. 2013). Laporte stated she was first surprised by the notice from her employer that her wages were to be garnished despite believing that she had been released of her debt obligation when MRA received her cashier's check on February 20, 2019. She claims she promptly communicated her concern to MRA, challenging the collection attempt. She was surprised again when her wages were actually garnished twice, despite being assured on the phone that her debt was satisfied and that MRA would be filing a Notice of Satisfaction. The inconsistent representations are enough to cast doubt in the mind of the least sophisticated consumer.

The crux of this claim's viability rests on whether MRA's failure to halt the garnishment constitutes a communication that can be challenged under the FDCPA. First, it is important to note that parties can challenge acts as well as omissions under the FDCPA. Stewart v. Bierman, 859 F. Supp. 2d 754, 759–60 (D. Md. 2012). Therefore, Laporte can challenge MRA's failure to file a Notice of Satisfaction to halt the wage garnishment. Second, under the FDCPA, "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). For the purpose of this analysis, the court finds that MRA communicated the status and amount of Laporte's debt to her employer via the state court clerk and the garnishment process. Conteh v. Shamrock Cmty. Ass'n, Inc., 648 F. App'x 377, 379–80 (4th Cir. 2016) (finding that a consumer can challenge representations made in a writ of execution that a collector files in court as a communication under the FDCPA, because, despite operating through an intermediary, it is intended to impact the consumer). Third, the communication need not be part of an "express demand for payment or even as part of an action designed to induce the debtor to pay," as long as it is

14

somewhat connected with the collection of any debt. Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014). MRA's contention that its delay in filing the Notice of Satisfaction was not born of a desire to collect double payment does not take the omission out of the ambit of the FDCPA. The writ's inception is connected to MRA's attempts to collect Laporte's debt. Taken together, the court finds the failure to retract the Writ of Garnishment within a reasonable time after Laporte's debt was satisfied ─ and certainly after Laporte called MRA to complain about it ─ can constitute an ongoing misrepresentation by MRA to Laporte's employer.

For the aforementioned reasons, Laporte's claims under §§ 1692e, 1692e(10), and 1692e(2)(A) may proceed and MRA's motion to dismiss them is denied. Laporte's claim under § 1692e(4) is dismissed, as the Writ of Garnishment does not threaten garnishment upon nonpayment; it merely notices garnishment has begun.

**B.**

Laporte further argues that even if the February 19 email verbiage and Writ of Garnishment do not amount to misrepresentations under the FDCPA, that MRA can still be held accountable under 15 U.S.C. § 1692f. Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect any debt," 15 U.S.C. § 1692f, and allows courts to sanction conduct that the FDCPA does not directly address. Price-Richardson v. DCN Holdings, Inc., No. CV MJG-17-2038, 2018 WL 902167 at *8 (D. Md. Feb. 15, 2018). Congress did not define "unfair or unconscionable" but did provide a non-exhaustive list of examples. "Relying on the plain meaning of the statute's terms, courts have considered an action unfair where it is 'marked by injustice, partiality, or deception,' and unconscionable

15

when it is 'unscrupulous,' 'show[s] no regard for conscience,' or 'affront[s] the sense of justice, decency, or reasonableness.'" Penn v. Cumberland, 883 F. Supp. 2d 581, 593 (E.D. Va. 2012) (quoting LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir.2010) (citations omitted)). "However, courts have limited § 1692f's prohibitive reach to conduct that is 'separate and distinct' from other alleged FDCPA violations." 2018 WL 902167 at *8 (collecting cases). Courts routinely dismiss § 1692f claims where the plaintiff "does not allege any conduct in [a § 1692f claim] separate from the conduct that forms the basis of the § 1692e claims." Penn, 883 F. Supp. 2d at 594. Specifically, to survive a motion to dismiss, Laporte must allege facts unique to her § 1692f claim. Biber v. Pioneer Credit Recovery, Inc., 229 F. Supp. 3d 457, 474 (E.D. Va. 2017).

Where Laporte's claims under 15 U.S.C. §1692e focus on MRA's obligations arising out of its communications to her and to her employer, Laporte's claims under 15 U.S.C. §1692f arise out of MRA's alleged attempt to collect on her debt twice. Laporte cannot rely on facts related to the February 19 email or the representations made in the Writ of Garnishment served on her employer to survive this claim as they are integral to her §1692e claims and thereby redundant. However, the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C.A. § 1692f(1). Laporte's § 1692f claim, alleging MRA twice collected on a debt that no longer existed, is sufficiently separate from her § 1692e misrepresentation claims to be actionable. Section 1692a defines a "debt collector" as "any person who uses any instrumentality of interstate commerce…to collect, directly or indirectly, debts owed or due or asserted to be

16

owed or due another." 15 U.S.C.A. § 1692a(6). The plain language of the statute suggests that a party can "collect" through the use of an instrumentality indirectly. Laporte has alleged that MRA intended to collect on her debt through the wage garnishment process and did actually collect on her debt twice before the garnishment stopped. The court finds sufficient grounds on which to conclude that, at least until the garnishment is stopped by the state court on March 11, the funds collected through garnishment were held by the clerk of the court on behalf of MRA. She further alleges that these two collections occurred after MRA had received her check in satisfaction of her debt. Laporte sufficiently pleads a claim of unconscionable collection of an amount not authorized by law under § 1692f.

## IV.

Laporte also pursues an "abuse of process" claim against MRA, pursuant to Virginia state law, for allegedly improperly using the state process of "wage garnishment." To sustain an action for abuse of process a Plaintiff must establish "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not property in the regular prosecution of the proceedings." Donohue Const. Co., Inc. v. Mount Vernon Assocs., 235 Va. 531, 539, 369 S.E.2d 858, 862 (1988) (citing Mullins v. Sanders, 189 Va. 624, 633, 54 S.E.2d 116, 121 (1949). An action for abuse of process "lies for the improper use of process after it has been issued." Glidewell v. Murray- Lacy & Co., 124 Va. 563, 570, 98 S.E. 665, 668 (1919). By contrast, the "legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." Donohue, 235 Va. at 540, 369 S.E.2d at 862.

Laporte contends that MRA perversely used the wage garnishment to double collect on her debt. Am. Compl., ECF No. 20, at 8. She claims they had actual knowledge that her debt had been satisfied and had caused a Writ of Garnishment to be served on her employer anyway. Id. Abuse of process, however, cannot implicate unauthorized actions, such as attempting to garnish wages to fulfill an already satisfied debt, unless the unauthorized action was accompanied by an ulterior motive for which the process was not intended. Bohannon v. LVNV Funding, LLC, No. 3:14-cv-354, 2015 WL 893362 *5 (E.D. Va. March 2, 2015) ("Abuse of process does not lie for meritless claims, but only for the perverse use of legal process."). Under Virginia law, a judgment creditor may institute a garnishment proceeding "in which the judgment creditor enforces the 'lien of his execution' against property or contractual rights of the judgment debtor which are in the hands of a third person, the garnishee." Marcus, Santoro & Kozak, P.C. v. Hung-Lin Wu, 274 Va. 743, 754, 652 S.E.2d 777, 783 (2007) (quoting U.S. v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995); see also Va. Code § 8.01-511. MRA initiated the process for wage garnishment for the purposes envisioned by the statute – to secure a means by which it may collect on its outstanding debt.

Unlike in her FDCPA claims, here Laporte must sufficiently plead MRA had ulterior motives. Triangle Auto Auction, Inc. v. Cash, 238 Va. 183, 184, 380 S.E.2d 649, 650 (1989) ("Abuse of process involves the wrongful *use* of process *after* it has been issued."); see also Vuyyuru v. Jadhav, 3:10cv173, 2011 WL 1483725, at *13 (E.D.Va. Apr. 19, 2011) ("A plaintiff must be served with some form of process—such as a summons, writ, subpoena, or notice of deposition—in order to claim the process was abused.") (citing Donohoe Constr. Co., Inc., 235 Va. at 539, 369 S.E.2d at 862–63); Mullins v. Sanders, 189 Va. at 633, 54 S.E.2d at 121–

18

22 (Va.1949))). In <u>Mullins,</u> the court found sufficient evidence of an abuse of process claim when a jury could find that "in instigating the arrest of [Mullins], [the officer] was prompted by an 'ulterior motive,'" which was the collection of a personal debt owed. 189 Va. at 635, 54 S.E.2d at 122. The court finds the claim that MRA instigated a second garnishment process after receiving the debt payment is pure speculation and finds no other support for the allegation that MRA intended to collect the debt twice. In fact, this court takes judicial notice of records MRA has procured demonstrating that it had filed for wage garnishment a month prior to receiving payment from Laporte. ECF No. 26, at 17.

In addition to insufficiently pleading ulterior motive in using a process, Laporte has not shown subsequent abuse. Even assuming arguendo that MRA served a second Writ of Garnishment after receiving payment on the debt, the court finds there was no abuse after its issuance. <u>Lucas v. Henrico Cty. Sch. Bd.</u>, No. 3:11CV5, 2012 WL 1665428, at *7 (E.D. Va. Apr. 12, 2012), <u>report and recommendation adopted in part</u>, <u>rejected in part</u>, No. 3:11CV5, 2012 WL 1665427 (E.D. Va. May 11, 2012) ("Even assuming Lucas has sufficiently alleged the existence of an ulterior purpose, her Complaint is devoid of any allegations that Defendants wrongfully *used* process *after* its issuance."). Laporte does not allege that the wage garnishment action was used to strongarm or extort her. <u>Donohoe Constr. Co.</u>, 369 S.E.2d at 862. Nor does she allege that MRA successfully received payment on her debt twice, but rather that she was forced to pay twice. <u>See</u> Am. Compl., ECF No. 20. The court takes judicial notice of court records showing that the funds were returned to Laporte by the clerk of the state court. ECF Nos. 26-7, 26-8. Additionally, the court notes that MRA filed a Garnishment

19

Disposition on March 8, 2019, and a Notice of Satisfaction on March 18, 2019, militating against any allegation of ulterior motive. ECF Nos. 26-5, 26-6.

Although the permissibility of timing of these filings are at issue in this case, the question of abuse is not. "Even viewing the allegations in the light most favorable to Plaintiff, Defendants used the processes as contemplated by law and demonstrated no ulterior motive. Here, Plaintiff has a complaint with the use of the process as applied to [her] case but not with any abuse of process." Ellis v. Palisades Acquisition XVI LLC, No. CV JKB-18-03931, 2019 WL 3387779, at *8 (D. Md. July 26, 2019); see Keys v. Chrysler Credit Corp., 494 A.2d 200, 207 (Md. 1985) (holding, where plaintiff suffered attachment of wages by Writ of Garnishment for a debt she had already satisfied, plaintiff had a proper complaint with the issuance of process but not with the abuse of process). Accordingly, the abuse of process claim is insufficiently pled and must be dismissed.

## V.

For the reasons set forth above, the court will **GRANT in part** and **DENY in part** MRA's motion to dismiss the amended complaint for failure to state a claim. This case will proceed on Count One of the amended complaint's FDCPA claims, but Count Two's abuse of process claim is dismissed.

It is so **ORDERED.**

ENTERED: May 28, 2020

_____
Michael F. Urbanski
Chief United States District Judge

20